Curia, per
Johnson, J.
Before entering into the several questions which have been made on the part of the complainant, it will be necessary to dispose of the objections which have been raised on the parts of the defendants, Gallanus, Andrew and D. M. Winn, who stand in the relation of sureties only to the administration bond.
The defendant Patsey Dendy has not answered; nor has she rendered any account of her administration : and these defendants, in their answer, go into an account; but they insist in the conclusion, that, although they have fully answered the bill, “this court ought not to take cognizance of the matter, because the complainant has an adequate remedy at law against them on the administration bonds/’ and pray the same benefit from this objection, as if it had been specially pleaded, &c.
In the case of Hoit v. Blanchard, 4 Desaus. Rep. 25, the court lays it down, that a suit in equity cannot be maintained against the sureties on an administration bond, and that the remedy against them is at law : and in the latter case of Glenn v. Connor, decided in the court of appeals, at December term, 1824, the court confirmed the decree of the circuit judge dismissing the bill as to the sureties of an administration bond. That was a case going all fours with this. There the administrator had neglected to put in an answer. The sureties did answer; and, as in this case, insisted on the objection, by way of defence: and Chancellor DeSaussure remarks that the decision was in conformity with the decided cases, and was founded in reason and justice.
I have labored to get rid of the objection raised in this case, believing that it was to the interest of these ^defendants, if they were in danger of ultimate liability, that they should be in court to investigate their accounts, as their principal had neglected to do so : and I at one time thought that the circumstance of their having accounted would enable me to do so; but it is a well settled rule of practice, that an answer to the merits does not deprive the defendants of any legal objection insisted on in the answer. We are bound by the decided cases, and it is the defendants’ own concern how far they will be affected by it. As to them, therefore, the bill must be dismissed.
*458 On the part of James Young it is insisted, that the bill, as to him, ought to be dismissed ; on the ground that he had fully settled with Patsey Dendy, his successor, all his actions and doings after the revocation of the administration granted to him, and whilst she was the sole administratrix.
There is no doubt of the correctness of this position. It was his duty, on the revocation of the administration granted to him, to pay over the funds in his hands to his successor; and if he had done so, and obtained a release, he would have been discharged. But the evidence on this subject has not been reported; and it is impossible that we can judge of the fact. It was suggested in the argument, that it had been ascertained that some mistake had occurred in that settlement; which if corrected would show that a balance was still in his hands. If that is the case, he is still liable notwithstanding the settlement and release.
Having disposed of these questions, I will now proceed to consider the grounds taken on the part of the complainant.
1. That the commissioner ought to have been directed to charge the estate with the maintenance of the children, before he deducted the widow’s distributive share.
*It is evident that this objection to the decree has originated in confounding the administration of the widow with her interest in the estate. The rights of the distributees are controlled and limited by the state of things that existed at the death of the ancestor: and if the administration in this case had been granted to a stranger, it never would have occurred to any one, that the distributive share of the widow was to be withheld until the children had been maintained and educated; for the grant of the administration to her could not impair her rights. This objection was therefore properly overruled.
2. That the commissioner ought to have been directed to set apart the income of the estate for the maintenance of the children, and allow nothing beyond it.
In the case of M’Dowell and others v. The Administrators of Caldwell, decided at the sittings in January last, the views of the court on this question are fully expressed, ante, 43.
A prudent man would always proportion his expenditures in such a manner as to bring them within his income; and the law imposes the same obligation on him to whom it confides the management of the affairs of others. Cases may and frequently do occur, in which prudent men are from necessity compelled to depart from this rule; but they are out of the ordinary course of events : and before the court will permit a guardian, trustee, executor or administrator to break in upon the capital for subsistence, it will require them to show clearly and distinctly its necessity. In cases of u rgent necessity, the court would not hold from the administrator the power of exercising a discretion over the subject; but generally it claims the right to be consulted as to the expediency before the act is done, when application can be made without defeating the object. In this case, as in that of M’Dowell v. Caldwell, no account had been *kept, and no vouchers were produced to show the amount of disbursements on account of maintenance : and the defendants go into a conjectural estimate of what might have been the probable amount; and in the *459 result it appears, that they have not only swallowed up the income, but a large portion of the capital. This is inadmissible, and in this respect, the decree must be reformed.
3. That the commissioner should have been directed not to allow interest on the allowance for maintenance.
Referring to the case of Wright v. Wright, decided during the present term, ante, 185, for the general rule as to the mode of calculating interest, it will be sufficient to remark, in reference to this case, that the mode of calculating interest is to deduct the credits at the time the payments or disbursements were made from the sum in hand, whether it consist of principal, interest or income; and the remainder constitutes the balance due. See the case of Black v. Blakely, ante, page 1.
4. That the commissioner should have been directed to deduct from the funds in the complainant’s hands a counsel’s fee of one hundred dollars, for the case of Teague v. Dunlap, and the present case.
It is not seen, how the defendants are interested in that question. When the complainant is called on to account for his own administration, it will be time enough to enquire into the merits of this claim.
5. That the commissioner should have been directed to charge interest on the whole amount of funds in the hands of the adminis-tratrix, and not on the annual balances only.
And here again I must refer to the case of Wright v. Wright, for the rule. If the current expenditures of the year exceeded the income, the balance of course must be deducted from the principal, and interest on the remainder could only be charged to the defendant. And if on the contrary the income exceeded the expenditure, *the excess became principal, on which the defendant was chargeable with interest.
The sixth and last ground of objection is, that the commissioner should have been directed to disallow the charges for extra expenses in settling with the bank, and the charge for the maintenance of old Bob.
With respect to the extra expenses of settling with the bank, it may be observed, that the undertaking of the administratrix was to discharge all the duties that devolved on her in that character; and if these expenses were incurred in the ordinary course of administration, the compensation allowed by law was intended to cover it. It is, for instance, the duty of an administrator to keep and render a just account of his administration ; and if he is incompetent or too indolent to do so, and thinks proper to keep a clerk or employ an accountant for that purpose, he must do it at his own expense.(a)
There is, it is true, a distinction between those services for which a compensation is allowed by the statute, and the expenses incurred in the course of the administration. The former referred to those duties which an administrator is supposed to undertake; and the latter to such as require the aid of professional skill, to which he is not supposed to be competent. The conduct and management of a law suit is an illustration of the latter.
It does not appear, however, that the settlement with the bank in *460 volved any difficulty or required the aid of counsel. That charge was therefore improperly allowed.
The defendants’ third exception relates to the support of an useless old slave named Bob. The commissioner allowed the administrator for his support. The chancellor says, “in his opinion most justly. To refuse it would be to compel executors and administrators to be gross inhumanity. The estate was bound to ^support an old worn out slave. The administrator did his duty and he must be allowed the charge.” This court concurs with the chancellor.
The case is ordered back to the commissioner to settle an account between the parties conformably to this opinion.

Case sent back to the commissioner.

 Logan v. Logan, 1 M’Cord’s Cha. R.ep. 1.